# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| CITY OF WHITING, INDIANA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO.: 2:14-CV-440-TLS-PRC |
|  | ) |  |
| WHITNEY, BAILEY, COX & MAGNANI, LLC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

The Plaintiff, the City of Whiting, Indiana (the "City"), in its own capacity and as the assignee of American Structurepoint, Inc. ("Structurepoint"), has sued the Defendant, Whitney, Bailey, Cox & Magnani Construction Services, LLC ("WBCM"), on contract and tort claims arising from problems with a revetment constructed as part of a waterfront revitalization project. The City's Amended Complaint [ECF No. 10] asserts six counts against WBCM: Count I-Breach of Contract (via Assignment); Count II-Negligence; Count III-Breach of Contract (Third Party Beneficiary); Count IV-Breach of Warranty (via Assignment); Count V-Indemnity (via Assignment); Count VI-Negligent Misrepresentation. The City brings Counts I, IV, and V against WBCM by virtue of an assignment agreement executed between the City and Structurepoint, dated October 30, 2014 (the "Assignment"). On February 6, 2015, WBCM filed a Motion to Dismiss [ECF No. 11] and its Brief in Support [ECF No. 12] alleging that the City's Amended Complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6). The City filed its Response [ECF No. 13], followed by WBCM's Reply [ECF No. 14]. While the Motion to Dismiss was pending, Defendant WBCM filed a Notice of Supplemental Authority [ECF No. 18]. The Notice brought to the Court's attention a Seventh Circuit opinion that interpreted Indiana law on the

economic loss doctrine's application to a claim for negligent misrepresentation. The City filed its Response [ECF No. 19] on September 29, 2015.

## AMENDED COMPLAINT ALLEGATIONS

The City authorized the design and construction of the Whiting Lakefront Park Project (the "Project"), which sought to revitalize a waterfront area along Lake Michigan by creating a park and marina. The Project would also protect the shoreline from erosion.

On September 22, 2009, the City hired Structurepoint as its construction consultant for the Project. The Short Form Agreement between the City and Structurepoint (the "Contract") outlined a multiphase project with several components [Am. Compl. ¶ 8, Ex. A-Contract, ECF No. 10-1]. The Contract identified services to be performed by Structurepoint—or provided through Structurepoint's subconsultants—for three tasks: "1. Lakeshore Promenade, Fishing Pier, and Shoreline Protection [ . . . ] 2. Whihala Beach Small Boat Harbor/Parking Improvements [ . . . ] 3. Eastern Shoreline Restoration and Habitat Restoration Area."[1] [Am. Compl. Ex. A-Contract, Amendment No. 3, Ex. B-Detailed Scope, ECF No. 10-1, at 16]. This included Structurepoint or its subconsultants performing "engineering analysis, design, and preparation of proposed typical cross-sections for stone revetment lakeshore protection, including construction details and specifications associated with appropriate materials and proper dimensions." [Am. Compl. Ex. A-Contract, Amendment No. 3, Ex. B-Detailed Scope ¶ A, ECF

---

[1] The City attached several exhibits to its Amended Complaint. When deciding a Rule 12(b)(6) motion, a court may consider documents attached to an amended complaint, such as contract documents, without converting the motion into one for summary judgment. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639–40 (7th Cir. 2015) (citing Fed. R. Civ. P. 10(c)). "[W]hen a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint," but this requires a threshold determination of a "contradiction." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004). A "contradiction" "exists when the statements are 'inherently inconsistent,' not when the later statement merely clarifies an earlier statement which is ambiguous or confusing on a particular issue." *Id.* (internal citations omitted).

No. 10-1, at 16]. Further, Structurepoint or its subconsultants were required to "[p]erform QA/QC for construction plans and technical specifications for lakeshore protection elements, including stone revetment lakeshore protection, stone breakwater fishing pier, and Whihala Beach Boat Launch/Harbor Improvements." [Am. Compl. Ex. A-Contract, Amendment No. 3, Ex. B-Detailed Scope ¶ H, ECF No. 10-1, at 16].

On June 7, 2010, Structurepoint subcontracted with WBCM to assist Structurepoint in its Prime Agreement with the City (the "Subcontract"). Specifically, as Structurepoint's subconsultant for the Project, WBCM would serve as the marine engineer. Similar to the Contract, the Subcontract identified the Project's three tasks as the Lakeshore Promenade, Fishing Pier, and Shoreline Protection; the Whihala Beach Small Boat Harbor/Parking Improvements; and the Eastern Shoreline Restoration and Habitat Restoration Area. For these tasks, WBCM would provide design and construction phase services, including performing engineering analysis, and designing and preparing Contract documents (such as plans, specifications, and cost estimates). WBCM also agreed to provide QA/QC for all marine engineering designs.

In early 2012, pursuant to the Subcontract, WBCM designed construction plans for a revetment at the Whiting Lakefront Park that would provide shoreline protection [Am. Compl. ¶¶ 13, 16–17, ECF No. 10; Am. Compl. Ex. C-Assignment, Recitals ¶¶ B–C, ¶ 1, ECF No. 10-3]. According to WBCM's design for the revetment, the mud-line elevation at the Project site was approximately 579 feet above sea level. On August 2, 2012, before any portion of the revetment had been constructed, Structurepoint notified WBCM via email that the mud-line elevation was only 568 feet above sea level. Despite this notice, on August 6, 2012, WBCM responded that the mud-line elevation had not changed from how it was depicted in WBCM's plan [Am. Compl.

Ex. C-Assignment, Recitals ¶ F, ¶ 1, ECF No. 10-3]. On or about October 31, 2012, the revetment failed during a storm [Am. Compl. ¶ 12, ECF No. 10; Am. Compl. Ex. C-Assignment, Recitals ¶ G, ¶ 1, ECF No. 10-3]. In an email dated November 14, 2012, WBCM acknowledged the discrepancy with the mud-line elevation and stated that because the "revetment design, including rock sizing, section depth, toe/crest requirements etc., is very much dependent upon the water depth at the revetment location," the revetment would need to be modified [Am. Compl. ¶¶ 24–25, ECF No. 10; Am. Compl. Ex. E-Email Dated Nov. 14, 2012, ECF No. 10-5].

Subsequently, the revetment failed two more times. First, on July 28, 2014, emergency remediation took place when the revetment showed signs of failure. Second, on October 31, 2014, many of the revetment's armor stones washed away into Lake Michigan. Relating specifically to the third failure, the City alleges "extensive damage to the City's property at the Project, including the Whiting Park pavilion, gazebo, and fishing pier." [Am. Compl. ¶ 31, ECF No. 10]. Due to the three revetment failures and the associated delays, Structurepoint ordered the Contractor, Superior Construction Company, Inc., to stop work. The City alleges that "the cost to the City of the delays and repairs to the revetment are in excess of [$1,365,000]." [Am. Compl. ¶ 34, ECF No. 10]. On both the City's non-privity claims (Counts II, III, and VI) and its assigned claims (Counts I, IV, and V), the City seeks to recover for damages it has suffered due to WBCM's alleged breaches [Am. Compl. ¶¶ 41–42, 47, 56–57, 63, 71–72, 80, ECF No. 10].

**ANALYSIS**

A plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement is sufficient if it gives the defendant fair notice of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint provides

4

effective notice to the opposing party when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Under Federal Rule of Civil Procedure 12(b)(6), a complaint that fails to state a plausible claim is subject to dismissal. *Id.* at 678–79. A plaintiff may also plead himself out of court by pleading facts that show he has no legal claim. *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

**A. Assigned Claims: Breach of Contract, Breach of Warranty, Indemnity**

On October 30, 2014, Structurepoint assigned to the City "any and all rights, interests, property, claims, demands, causes of action and choses in action, arising out of contract or tort, which [Structurepoint] may have against WBCM relating to the Subconsultant Agreement and/or the Revetment Failures." [Am. Compl. Ex. C-Assignment ¶ 2, ECF No. 10-3]. WBCM does not address each assigned claim separately. Instead, WBCM seizes upon a perceived pleading error by the City, which is that for the assigned claims, the Amended Complaint states that the City seeks to recover "its own damages." WBCM argues that the Amended Complaint does not state that the City seeks to recover the damages incurred by Structurepoint. Because of the City's phrasing in the Amended Complaint, WBCM's Motion to Dismiss recasts all the City's assigned claims as ones for indemnity [Reply 13, ECF No. 14 ("The City categorizes [the assigned] claims as claims for indemnity, breach of contract, and breach of warranty, although these claims are all *de facto* indemnity claims to the extent that the City seeks to recover the City's alleged damages.")].

WBCM then argues that given the language in the Amended Complaint, the Assignment between the City and Structurepoint shows that the City cannot recover from WBCM. [Br. Supp. Mot. Dismiss 20, ECF No. 12]. Specifically, WBCM argues that because the City agreed to

5

"forego taking legal action against [Structurepoint]" and "to pursue direct legal action against WBCM," [Am. Compl. Ex. C-Assignment, Recitals ¶ O, ¶ 1, ECF No. 10-3], "Structurepoint has no liability to the City for the City's alleged damages." [Br. Supp. Mot. Dismiss 23, ECF No. 12]. In WBCM's view, the Assignment shows "there is nothing from which to be indemnified, nor will there ever be, since the City has agreed not to pursue legal action against Structurepoint." In sum, WBCM argues that "[t]he City attempts to pursue claims for **the City's alleged damages** by stepping into the shoes of Structurepoint," which is not possible because Structurepoint has not incurred a loss to the City [Reply 13, ECF No. 14; *see also* Br. Supp. Mot. Dismiss 21, ECF No. 12 ("For WBCM to have liability to Structurepoint, there must be actual liability and damages to Structurepoint. . . . If Structurepoint has no liability to the City, then there are no claims via the Assignment Agreement that the City can assert against WBCM.")].

The standards for reviewing contracts are well-established. Under Indiana law, contracts are interpreted to ascertain and effectuate the intent of the parties as reasonably manifested in the agreement, and if the language of the contract is clear and unambiguous, it should be given its plain and ordinary meaning. *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Thus, courts give effect to the intentions of the parties as expressed in the four corners of the agreement, and courts determine the meaning of a contract from an examination of all of the contract's provisions, and not from a more narrow consideration of individual words, phrases, or paragraphs read alone. *Moore v. Wells Fargo Constr.*, 903 N.E.2d 525, 531 (Ind. Ct. App. 2009). Parol, or extrinsic evidence, is inadmissible to add to, vary, or explain clear and unambiguous terms of a written instrument. *Evan v. Poe & Assocs. Inc.*, 873 N.E.2d 92, 101 (Ind. Ct. App. 2007). An ambiguity does not arise simply because the parties disagree on the interpretation; rather, contract language is ambiguous only if reasonable people could come to

different conclusions about its meaning. *Id.* at 98; *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distribs., Inc.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005).

Indiana law recognizes that a contract-based chose in action, if not purely personal in nature, is assignable. *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 838, 848–49 (Ind. Ct. App. 2010) (quoting *Midtown Chiropractic v. Ill. Farmers Ins. Co.*, 847 N.E.2d 942, 944 (Ind. 2006)). Generally, "[a] valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor." *Id.* at 848 (quoting *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993)). Further, an assignment is not prohibited just because the assignment was made to an adversary. *Id.* (quoting *INS Investigations Bureau, Inc. v. Lee*, 709 N.E.2d 736, 741 (Ind. Ct. App. 1999)).

The Amended Complaint alleges that the City and Structurepoint executed an assignment agreement, which the City attached to its Amended Complaint as Exhibit C. The paragraph titled "Consideration and Assignment of Claims Against WBCM" reads as follows:

> [Structurepoint] hereby assigns to [the City], and [the City] hereby accepts, the Subconsultant Agreement and any and all rights, interests, property, claims, demands, causes of action and choses in action, arising out of contract or tort, which [Structurepoint] may have against WBCM relating to the Subconsultant Agreement and/or the Revetment Failures. [The City] is, also, hereby granted the sole and exclusive right to pursue both its own claims and the claims of [Structurepoint] against WBCM relating to the Revetment Failures and/or WBCM's breach of the Subconsultant Agreement, or negligent performance of the Subconsultant Agreement, or any other failure to perform its obligations on Project 21. (All such claims shall be referred to collectively, the "Claims"). Notwithstanding the foregoing, [Structurepoint] and [the City] agree that [the City] shall not assume any contractual obligations of [Structurepoint], including, without limitation, any contractual obligations to WBCM, any [Structurepoint] subconsultant or other third party.

[Am. Compl. Ex. C-Assignment ¶ 2, ECF No. 10-3]. The City and Structurepoint also incorporated the Assignment's recitals as operative clauses. The relevant paragraph reads,

7

"[Structurepoint] has proposed and [the City] has consented to pursue direct legal action against WBCM to recover [the City's] loss and damage and forego taking legal action against [Structurepoint] as further set forth in this Agreement." [Am. Compl. Ex. C-Assignment, Recitals ¶ O, ¶ 1, ECF No. 10-3].

Although WBCM takes issue with the assigned Counts' paragraphs that refer to the City's damages, WBCM places too much emphasis on the technicalities of the City's pleading. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) ("Rule [8] reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court."). WBCM has fair notice that the City is claiming damages based on the Assignment. Each header for Counts I, IV, and V states that the count is being asserted "via Assignment." Next, these Counts' paragraphs state that "Structurepoint assigned any and all claims, rights and remedies available to it under the Subcontract to the City," [Am. Compl. ¶¶ 36, 60, 66, ECF No. 10], and that the damages incurred result from WBCM's alleged breaches of the Subcontract. Along with the contract documents attached to the Amended Complaint, the City has alleged sufficient factual matter to give WBCM notice of its claims. To the extent the City may have misstated the damages it is legally entitled to recover, the Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) (per curiam); *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010) ("When a complaint asserts claims that are legally valid and those that are not, the correct judicial response is not to dismiss the complaint, let alone with prejudice. It's not even necessary to require a plaintiff to file a 'cleaner' amended complaint. The case may

proceed under the original complaint, with the understanding, provided by the court if necessary, as to the proper scope of claims that can survive the legal challenge.").

WBCM does not otherwise challenge the City's claims asserted via the Assignment. Given this, it is sufficient to note that Indiana law recognizes the causes of action that the City asserts through the Assignment.[2] *Essex v. Ryan*, 446 N.E.2d 368, 374 (Ind. Ct. App. 1983) ("A right to damages for breach of contract is assignable."); *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 838, 849 & n.9 (Ind. Ct. App. 2010) (rejecting the plaintiff's common law indemnity claim, but recognizing that a contractual indemnity based on a promise to indemnify against liability may be sought once liability has become fixed and established, even though no actual loss or damage has occurred when recovery is sought); *Id.* at 852 (permitting a major project owner to bring (via assignment) a contract claim for breach of professional standard of care when the defendants were not in privity with the project owner and were connected through a chain of contracts).

## B. Non-Privity Contract and Tort Claims

### 1. *Third-Party Beneficiary*

For a third-party beneficiary claim to survive a motion to dismiss, the complaint must show: "(1) [a] clear intent by the actual parties to the contract to benefit the third party; (2) [a] duty imposed on one of the contracting parties in favor of the third party; and (3) [p]erformance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract." *Lunhow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001) (emphasis omitted)

---

[2] WBCM provides a lengthy discussion of the *Severin* Doctrine and insists it is controlling in this case. WBCM does not cite any Indiana authority, or any Seventh Circuit case interpreting Indiana law, that discusses this doctrine. Although the Court recognizes that the *Severin* Doctrine may apply in federal government contracting cases, it is not binding on Indiana courts. *See* Michael A. Rosenhouse, Annotation, *Construction and Application of* Severin *Doctrine*, 25 A.L.R. 6th 265 (2007).

9

(quoting *NN Investors Life Ins. Co. v. Crossley*, 580 N.E.2d 307, 309 (Ind. Ct. App. 1991)). The controlling factor is the contracting parties' intent that the third party be a direct beneficiary, and this intent "may be shown by specifically naming the third party or by other evidence" that appears in the instrument's language when interpreted and construed. *Id.*; *Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006) (quoting *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996)).

The City's Amended Complaint highlights certain portions of the Subcontract to show that Structurepoint and WBCM intended the City to be a third-party beneficiary. The Subcontract identifies the City and states that "[WBCM] shall assist [Structurepoint] under its Professional Services Agreement with [the City]" for the Project [Am. Compl. Ex. B-Subcontract ¶ 1, ECF No. 10-2]. WBCM also agreed to act with a professional standard of care when working on the Project [Am. Compl. Ex. B-Subcontract ¶ 2.2, ECF No. 10-2]. Further, the Subcontract incorporates the Contract's terms and conditions, which includes Structurepoint's duties to the City [Am. Compl. Ex. B-Subcontract ¶¶ 5.6, 5.12, Attachment E, ECF No. 10-2]. Although the Subcontract identifies WBCM as an independent contractor and prohibited Structurepoint from using WBCM's work on different projects, WBCM cites no authority to show why these factors bar the City's third-party beneficiary claim. The documents do not contain a "no third-party beneficiaries" clause, and if anything, the parties' intent is ambiguous. The City is entitled to seek discovery on the parties' intent. *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 564 (7th Cir. 2002) (stating that third-party beneficiaries can be strangers to a contract, thus the parol evidence rule may not apply); *cf. Bowman v. Int'l Bus. Machs., Corp.*, 853 F. Supp. 766, 771–72 (S.D. Ind. 2012) (recognizing that *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 104–05 (Ind. Ct. App. 2007) disagreed with *Deckard* when a contract was unambiguous, and granting defendant's

motion to dismiss because the contract had a "no third-party beneficiaries" clause, meaning that the parties could not have intended that plaintiff be a third-party beneficiary and the "stranger to the contract" exception would not apply.)

**2.** *Negligence*

To hold a defendant liable in tort for negligence, a plaintiff must prove "(1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach." *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010). Regardless, Indiana law imposes certain limitations on what the plaintiff can recover. The "economic loss rule" precludes tort liability for purely economic loss, *id.* at 727, which may be viewed as "disappointed contractual or commercial expectations." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 154 (Ind. 2005). This means that when a plaintiff buys an inferior product, and then that product does not perform its generally intended function, he cannot sue in tort for the product's diminution in value, incidental and consequential losses as lost profits, rental expense, and lost time. *Id.* (quoting *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1074 (Ind. 1993), *modified on other grounds*, 644 N.E.2d 84 (Ind. 1994)). "Economic loss" also includes "[d]amage to the product itself, including costs of its repair or reconstruction . . . even though it may have a component of physical destruction." *Id.* Construction claims are subject to the economic loss doctrine, even though these claims are not necessarily based on defective goods or products. *Id.* at 155. Despite these limitations, the economic loss rule does not shield a defendant from tort liability when "the defect causes personal injury or damages to property other than the product or service itself." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 726.

11

In Count II, the City alleges that WBCM acted negligently by not using reasonable care, which "caused the failures of the revetment and subsequent damages to the City's property at the Project." [Am. Compl. ¶ 46, ECF No. 10]. The parties agree that the economic loss doctrine is relevant, but the City argues it states a claim because it alleged damage to "other property." WBCM disagrees, arguing that the City has only identified damage to property that falls within the Project's scope, and thus, the economic loss rule precludes Count II.

Both parties rely extensively on *Indianapolis-Marion County Public Library*, where the Indiana Supreme Court performed a detailed analysis of the "economic loss rule" on facts that are nearly identical to the present case. The Indianapolis-Marion County Public Library (the "Library") sought to renovate and expand its multi-structure facility in downtown Indianapolis, with one component of the project being a parking garage. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 725. The Library contracted with an architect to provide services for the entire project. *Id.* In turn, the architect subcontracted with two firms. *Id.* These two firms agreed to perform structural engineering services and to inspect the construction as it progressed to ensure the builders complied with the construction documents. *Id.* Well into the project, the Library discovered several construction and design defects in the parking garage. *Id.* This caused the Library to halt the entire project and sue the subcontractors, with whom the Library was not in privity, but was connected to through its contract with the architect.[3] *Id.*

The Library alleged negligence and sought to recover damages for repair costs, project delay settlements, and other costs. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 725–

---

[3] The Library initially brought suit against a number of entities involved with the project. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 725 & n.1, 726. After the Library settled with the privity defendants, the Library continued the suit against the non-privity defendants. *Id.* at 726. Although this procedural nuance is noted, it is not relevant in this matter. The Indiana Supreme Court decided the case with the parties aligned similarly to the City and WBCM.

26. The court rejected the Library's argument that these damages were recoverable under the "other property" rule. *Id.* at 731. First, the court defined "the product or service that the Library purchased [as] the renovated and expanded library facility itself," which involved multiple parties completing the work "as part of a single, highly-integrated transaction." 929 N.E.2d at 731. Second, the court applied *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150 (Ind. 2005), and asked whether the damaged property was acquired by the plaintiff as a component of the defective product or was acquired separately. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 732 (quoting *Gunkel*, 822 N.E.2d at 156–57 (holding that the other property rule allowed a plaintiff, who contracted separately with a corporation (to build a house) and the defendant (to attach a façade to the house), to recover in tort against the defendant for damage to the house caused by defendant's negligent installation of the façade)). The court held that the economic loss rule precluded recovery because the product or service purchased from the defendants was an integral part of the entire library project, and thus any damages from the defendants' negligence were to the purchased product, not other property. *Id.*

WBCM argues that the City's Amended Complaint fails to state a claim for negligence because the City's alleged damages are encompassed within the Project. However, this conclusion stretches the Amended Complaint's language too far. First, WBCM points to the City's allegation that it has suffered "extensive damage to the City's property at the Project, including the Whiting Park pavilion, gazebo, and fishing pier." [Am. Compl. ¶ 31, ECF No. 10]. Regardless of whether the pavilion, gazebo, and fishing pier are referenced in the Contract, [Am. Compl. Ex. A-Contract, Amendment No. 4, Ex. B1-Detailed Scope & Ex. B2-Detailed Scope, ECF No. 10-1, at 24, 35], "including" signifies a non-exhaustive list. Without deciding whether the pavilion, gazebo, and fishing pier are "other property," it is possible that the City has

13

property at the Project not mentioned in the list that would qualify as "other property." Further, this list of damaged property also refers exclusively to the third revetment failure, not the first or second failures. The Amended Complaint later refers collectively to the "subsequent damage to the City's property at the Project," which may plausibly include "other property." [Am. Compl. ¶ 46, ECF No. 10]. Although WBCM may be correct regarding the City's claim for $1,365,000 due to the delays and repairs to the revetment, the City's allegations have not foreclosed its ability to recover some amount for damage to other property. Therefore, the City states a claim for negligence.

## C.   *Negligent Misrepresentation*

Indiana recognizes the tort of negligent misrepresentation, and it may be actionable when the party has suffered only economic loss. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 740–41 (citing Restatement (Second) of Torts § 552 (1976)). The City alleges that "WBCM and the City met to discuss the Project on multiple occasions" and WBCM made false representations to the City regarding the construction and remediation [Am. Comp. ¶¶ 74–75, ECF. No. 10]. The City's pleading references several attached exhibits that contain emails between Structurepoint and WBCM, as well as the minutes and follow-up email from a meeting attended by the City, Structurepoint, and WBCM. [Am. Compl. ¶¶ 19, 24, 29; ECF Nos. 10, 10–4, 10–5, 10–6]. WBCM argues that by asserting its negligent misrepresentation claim, the City is exploring a route the Indiana Supreme Court already barred. [Def.'s Br. 18, ECF No. 12]. In response, the City states that although the general rule is no tort liability for pure economic loss caused unintentionally, Indiana courts were instructed to "be open to appropriate exceptions, such as (for purposes of illustration only) . . . negligent misstatement." [Pl.'s Resp. 8–9, ECF No. 13 (quoting *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 736) (internal quotation

14

marks omitted)]. The City contends the present facts warrant this Court creating an exception. However, the facts alleged prevent the Court from granting the City's request.

Despite the Indiana Supreme Court's receptiveness to "appropriate exceptions," it precluded the Library from asserting a negligent misrepresentation claim when it considered the facts discussed in this Opinion's preceding section. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 741. The court acknowledged that it created an exception to the general rule by allowing a negligent misrepresentation claim "where a mortgage lender not in privity of contract with a title company seeks to recover for the title company's negligence in issuing a title commitment that failed to disclose an encumbrance." *Id.* (citing *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 743–44 (Ind. 2010)). Despite this, it continued, "because the Library is connected through a network or chain of contracts, the economic loss rule precludes it from proceeding in tort in this case." *Id.* The court used the same rationale to bar the Library's tort claims based on negligent misrepresentation and professional liability:

> We hold instead that there is no liability in tort to the owner of a major construction project for pure economic loss caused unintentionally by contractors, subcontractors, engineers, design professionals, or others engaged in the project with whom the project owner, whether not technically in privity of contract, is connected through a network or chain of contracts. This is the Library's situation here and the economic loss rule applies.

*Id.* at 740. Based on the Amended Complaint's allegations, the City's factual scenario does not appear distinguishable from that of the Library's.

Although the "appropriate exception" language from *Indianapolis-Marion County Public Library* appears to favor the City, the court's discussion of *Peters v. Forster*, 804 N.E.2d 736 (Ind. 2004), reveals that the City's reliance is misplaced. In *Peters*, a couple hired a contractor to install a ramp at their home's entrance, which the contractor attached to the home with only a few screws. *Peters*, 804 N.E.2d at 737–38. After the contractor finished the installation, a man

15

who was delivering food to the couple's home slipped on the ramp and sued the contractor. *Id.* at 737. In *Indianapolis-Marion County Public Library*, the court accepted that "*Peters* stands for the proposition that design professionals can be held liable in tort even though not in privity of contract," but the court distinguished *Peters* as "a claim by a plaintiff who suffered serious personal injury"—not purely economic loss. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 734 & n.11. The text that the City omitted from its "appropriate exception" quotation illustrates a situation where tort liability may still attach in a construction context. *Id.* at 736 ("We need not decide today whether the plaintiff in *Peters* would have been allowed to recover had he suffered purely economic loss . . . ."). Unlike the ramp installer in *Peters*, the City's Amended Complaint shows that it seeks a tort recovery as the owner of a major construction project where it was connected with the alleged tortfeasor through a chain of contracts. The City's negligent misrepresentation claim fits within the scenario that the court foreclosed in *Indianapolis-Marion County Public Library*, not the unanswered *Peters* hypothetical.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant WBCM's 12(b)(6) Motion to Dismiss the City's Amended Complaint [ECF No. 12]. This litigation remains pending on all the City's claims, except the City's claim for negligent misrepresentation, which is DISMISSED WITH PREJUDICE.

SO ORDERED on November 5, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION
